IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DEXTER SMITH, | ) Civil Action No.: 4:05-cv-1554-GRA-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| TOM FOX, DIRECTOR OF THE J. REUBEN | ) |
| LONG DETENTION CENTER; AND | ) |
| PHILLIP THOMPSON, SHERIFF OF | ) |
| HORRY COUNTY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff, Dexter Smith, ("plaintiff/Smith") is an inmate in the custody of the South Carolina Department of Corrections (SCDC) currently housed at J. Reuben Long Detention Center ("JRLDC"). Plaintiff, appearing *pro se*, filed his complaint on June 6, 2005, under 42 U.S.C. § 1983[1]. On November 28, 2005, defendants filed a motion for summary judgment along with a memorandum in support and affidavits. Because the plaintiff is proceeding pro se, he was advised on or about November 29, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgement with additional evidence or counter affidavits could result in dismissal of his complaint. Plaintiff filed a response to the motion for summary judgment on January 3, 2006. Defendants filed a reply on January 5, 2006.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

# I.  DISCUSSION

## A. ALLEGATIONS

The plaintiff alleges that his constitutional rights were violated because he was served food which contained roaches on two occasions and a strand of hair on one occasion. Further, plaintiff asserts that he was moved to a cell in maximum security which was cold causing health problems, that he was subjected to medical indifference, and that he was cut on the neck by the barber at JRLDC. Specifically, plaintiff alleges as follows in his complaint, quoted verbatim:

. . . I received a lunch tray the month of November with a roach on the tray. I pointed it out to the Correctional Officer Chodmen, he gave me another tray. I couldn't eat anymore because it spoiled my appetite, and made me very upset. Late on I've been moved to B2-134 in the month of December 2004. I received a dinner tray with roach inside some string beans, after eating one bite of them. I slide the tray outside the door very hard against the wall. I've been very upset. I wrote up a grievance of the situation me finding roaches in my food twice. In the month of December 2004, I've been given some medication for pain relief for my neck, lower back pains by Nurse Debbie Hipp the head nurse, the medication that I received made my stomach hurt very badly, which later on when I used the restroom I discovered blood in my waste. I told them about it. (Medical). Then Nurse Clark interviewed me before Cpl. Lewis, asking me about the blood I saw in my waste. The month of January I was placed into Maximum Security in a cell that was 45 to 50 degrees Fahrenheit, because I didn't change out my blanket while they go wash it without another blanket with head cold sinuses infection, headcold, high-blood pressure. I became very ill with flu symptoms. Nurse Brown willfully gave me some sinuses medication that makes my blood-pressure goes up, and I told her about it, she said she don't care. . .

I've been moved to B3-115 the first week of February. When I first moved to B3-115 the room walls were covered with mildew, molded water on the walls, floor. I had to sleep on the floor no air circulating in the room. I wrote grievances, inmate requests, there was no response. I became very sick in B3-115 consistent with headaches, sinuses infections, headcold, sores in my nose, sores on my side of my mouth, rash on my arms. The molded mildewed room contributed to my sickness. On 3-9-05 I got a hair-cut from the barber of J. Reuben Long Detention Center,  Pat, she's very aggressive, she cut me bad on my right side of my neck it bleed bad. My cellmates witnesses this cut . . . I filled out a medical form to see the nurse Debbie Hipp, she looked at the cut and said it was nothing, sent me back to B3-pod. . .

2

> On the date of 4-24-05, I received a lunch tray with a long stran (sic) of hair twisted up in my rice and chicken. I took four bites out of it before I discovered it. Officer R. Rodreaguz, inmate Reginald Crews, witnessed this incident. This conduct of the J. Reuben Long Detention Center has caused a great deal of mental stress, emotional injury, physical injury, personal injury, such as worsening my neck, lower back pains, lack of insufficient treatment for relief as requested.

(Complaint).

Plaintiff requests the sum of $3,000,000.00 for JRLDC's "negligent, reckless, willful or wanton of cruel unusual punishment to inmate. . ."  (Complaint, p. 5).

Defendants filed a motion for summary judgment on November 28, 2005.

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### C.  CONDITIONS OF CONFINEMENT

As previously stated, plaintiff alleges conditions of confinement violations while incarcerated at JRLDC.  He has alleged that he was served food on two occasions with a roach and once with a strand of hair. Plaintiff has also alleged that he was placed in a cell with cold temperatures and/or mold and mildew which led to headaches, colds and sinus infections.

Defendants assert in their motion for summary judgment that "in order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Defendants argue that plaintiff has put forth no hard evidence that could lead a reasonable juror to conclude the alleged conditions were meant to punish him. Further, defendants assert that plaintiff's claims fail because he has failed to show any evidence that the roaches in his food or room condition has, in fact, caused his alleged health problems.

4

**AFFIDAVITS**

Defendants submitted the affidavit of Deborah Hipp, Nurse Practitioner, who attests that she is employed full time at JRLDC as the medical director and prescribes medication, assess inmates, and gives and signs all medical orders. Hipp states that she is on call twenty-four hours a day, seven days a week and sees, on average, twenty to thirty inmates each day. Hipp attests that based on her review of plaintiff's medical records, she believes that he is a healthy young man who may have mild allergies and occasional back pains. Hipp attests that plaintiff is able to work without any restrictions but is a chronic complainer who seeks medical treatment daily for problems he had in 2000, which was prior to his incarceration. Hipp attests that a review of plaintiff's medical records reveal that when he arrived at JRLDC on September 19, 2004, he stated that he had a history of low back pain and other shooting pain but that he was not taking any medication prescribed by a doctor. Hipp states that she reviewed all plaintiff's medical records and, in regard to plaintiff's complaint that he had blood in his waste in December 2004, his records from December 2004 reveal no complaints of this type. On December 11, 2004, plaintiff was given Sudagest for allergies, and on December 18, 2004, plaintiff was given Benadryl and Ibuprofen for pain. On December 20, 2004, Hipp attests that plaintiff was seen complaining of back pain and migraine headaches and that the Sudagest plaintiff was given for allergies caused his blood pressure to go up briefly, which later subsided. On the same day, Hipp asserts that she prescribed Clonidine for plaintiff's blood pressure.

Since December 2004, Hipp attests that plaintiff has been in no acute distress and has received adequate medical attention and treatment. Hipp contends that plaintiff has been seen over 100 times and treated over 50 times since his incarceration at the JRLDC in September 2004 until the date of her affidavit which was October 2005. Hipp attests as to plaintiff's medical record giving

5

a detailed summary of his visits to medical. Hipp summarizes that she never saw any blood in plaintiff's stool and never received any complaints or notification from or by plaintiff of any medical problems associated with there being improper food or roaches in his food. Hipp attests that "I never say any flu symptoms by Mr. Smith. Flu symptoms would include high temperature, fatigue, nausea, and vomiting, none of which Mr. Smith ever complained." (Hipp affidavit, Doc. #14-3). Hipp attests that plaintiff's complaints have been "absolutely consistent from the date of his incarceration, September 19, 2004, until the present day. It is also my opinion that the transfer of Mr. Smith to the B Pod, B3-115 unit, in no way affected his health. Based upon my review of Mr. Smith's medical records and my recollection of personal treatment of Mr. Smith, Mr. Smith's medical condition did not change between January 2005 and March of 2005, which was prior to Mr. Smith's transfer to constant medical supervision in the A Pod [on] April 6, 2005." (Hipp affidavit, Doc. #14-3).

Defendants submitted the affidavit of Lieutenant Anna Cunningham ("Cunningham") who attests that she is employed by the SCDC at the JRLDC and has personal knowledge of plaintiff's allegations and the cell in which he was housed and complains of in this action. Cunningham attests that it is each inmate's responsibility at the JRLDC to clean his own room. Cunningham attests that "Cell B3-115, which inmate Smith complains contained mold and mildew in his complaint, has not contained and still does not contain any mold or mildew." Cunningham attests that inmates are given cleaning supplies and encouraged to clean their own rooms. Cunningham states that inmate cleaning crews also clean showers and other areas of the detention center. Cunningham attests that she has reviewed plaintiff's inmate files and has received no complaints personally of any roaches in his food via a grievance. (Cunningham affidavit, doc. #14-4).

Plaintiff responded to defendants' motion for summary judgment and the affidavits. Plaintiff

6

submitted documents entitled "Recorded statements" of inmate Thomas Jenkins. In these statements, Inmate Jenkins states that he witnessed mold and mildew on the walls of plaintiff's cell in B3-115. Jenkins also states that he witnessed Officer Jordan spraying down the walls with bleach and scrubbing and witnessed the mildew appearing again on the walls due to lack of air circulating in the cell. Jenkins states that he never witnessed Lieutenant Cunningham viewing the condition of mold, mildew in the cell of B3-115. Plaintiff also submitted a statement from Jenkins stating that he witnessed a very bad cut on plaintiff's neck after he received a haircut from the barber at JRLDC on March 9, 2005.  (Doc. #17).

Plaintiff states in his response that he told Nurse Hipp that there were certain medications that he should not take such as Soma muscle relaxers because they do not agree with his stomach. However, he asserts that Nurse Hipp insisted he try a new medication called "Naprasyn." Plaintiff also contends that the medicine caused his stomach to hurt and he saw blood in his "waste." Plaintiff states that he has had blood pressure problems since the incident in December 2004 with the medicine that caused his stomach to hurt. Plaintiff asserts that Nurse Hipp refuses to give him "adequate relief" for pain and she "hides the pain that I'm having by giving me blood pressure medicine." (Doc. # 17). Plaintiff asserts that when his neck was cut by the barber at JRLDC, Nurse Hipp did not administer a Tetnis shot nor give any medical treatment. Plaintiff contends that the reason Nurse Hipp did not see any blood in his stool was because she ignored his medical request.

Further, plaintiff argues that Lieutenant Cunningham never came to view the conditions of cell B3-115. Plaintiff asserts that the inmates are allowed to do general cleaning in their cells but the jail does not supply cleaning supplies for cleaning mold and mildew from the walls. As a result of mold and mildew while plaintiff was in this cell, plaintiff alleges that he suffered with sores in his

nose and mouth. (Doc. # 17).

Defendants filed a reply to plaintiff's response stating that this is the second lawsuit plaintiff has filed against the same defendants. Defendants assert that the first lawsuit filed April 6, 2005, alleged mold, mildew, and inadequate ventilation at JRLDC. Defendants assert that this action alleges  similar allegations as the first lawsuit and those allegations should not be considered. Defendants state that no evidence exists to show that plaintiff sustained a serious physical or emotional injury as a result of any of the alleged conditions during his incarceration at JRLDC.

Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). In addition, prison officials cannot be held liable under the Eight Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Court of Appeals for the Fourth Circuit considered the case of Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993).  The Court in Strickler said that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant physical or mental harm. While any of these conditions standing alone may not constitute cruel and unusual punishment, they may constitute Eighth Amendment violation if considered in aggregate, McElveen v. County of Prince William, 725 F.2d 954 (4th Cir.), cert. denied, 469 U.S. 819 (1984).  However, to be considered in aggregate, conditions must have mutually enforcing effects that produces deprivation of single, identifiable need such as food, warmth, or exercise.  Wilson v. Seiter, 501 U.S. 294 (1991).  The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by

deliberate indifference on the part of the defendants. <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir., <u>cert. denied</u>, 510 U.S.949 (1993)).          Although an issue of fact may exist as to whether or not Nurse Hipp gave him a Tetnis shot when he was cut by the barber at JRLDC and whether or not there was mold and mildew on the walls of his cell, plaintiff has not shown any significant physical or emotional injury as a result of any violation to raise an issue of fact for trial. Plaintiff has failed to produce any evidence of serious or significant physical or emotional injury resulting from his allegations.  Accordingly, the undersigned recommends that summary judgment for the defendants be granted on these claims.

This Court is required to construe <u>pro se</u> complaints and petitions liberally.  Such <u>pro se</u> complaints and petitions are held to a less stringent standard than those drafted by attorneys. <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980).   A federal district court is charged with liberally construing a complaint or petition filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case. See <u>Cruz v. Beto</u>, 405 U.S. 319 (1972).  When a federal court is evaluating a <u>pro se</u> complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true.  <u>Fine v. City of New York</u>, 529 F.2d 70, 74 (2d Cir. 1975).   However, even under this less stringent standard, the Complaint in the captioned case is subject to summary dismissal because plaintiff has failed to set forth a claim for which relief can be granted.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  <u>Weller v. Dep't of Social Svcs.</u>, 901 F.2d 387 (4th Cir. 1990).

Additionally, the inmate must show more than <u>de minimis</u> pain or injury. <u>Id</u>. at 9.  Although a plaintiff need not show a significant injury, the court in <u>Norman v. Taylor</u>, 25 F.3d 1259, 1263 (4th

Cir. 1994), <u>cert. denied</u>, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is <u>de minimis</u>." Plaintiff has not shown more than <u>de minimis</u> pain or injury. Specifically, the plaintiff does not present any evidence that he suffered any injury resulting from the allegations that the jail was overcrowded or from having found a roach or strand of hair in his food. "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment." <u>Stickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir. 1993).

"Extreme deprivations are required to make out a conditions-of-confinement claim. . . Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an eight Amendment violations.'" <u>Strickler</u> at 1380 f.n. 3, quoting <u>Hudson v. McMillian</u>, 503 U.S.1,  - - -, 112 S.Ct. 995, 1000 (1992).

"In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." <u>Strickler</u>, 989 F.2d 1375, 1379 (4th Cir. 1993), quoting <u>Williams v. Griffen</u>, 952 F.2d 820, 824 (4th Cir. 1991). "The Supreme Court has explained that the first showing requires the court to determine whether the deprivation of the basic human need was objectively "sufficiently serious," and the second requires it to determine whether subjectively "the officials act[ed] with a sufficiently culpable state of mind." <u>Strickler</u>, at 1379, quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, - - - , 111 S.Ct. 2321, 2324, 115 L.Ed 2d

10

271 (1991); Hudson, supra.

As to the first element, "in order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler at 1381.

As previously discussed, plaintiff has failed to allege or show a serious physical or emotional injury that arises to a serious deprivation of a basic human need. Id. at 1379. Therefore, plaintiff has failed to establish a 42 U.S.C. §1983 cause of action that the prison conditions violated his Eighth Amendment right to be free from cruel and unusual punishment. Therefore, it is recommended that summary judgment be granted with respect to the above issues complaining of conditions of confinement.

## D.  MEDICAL INDIFFERENCE

In his complaint, plaintiff complained that he was given medication in December 2004, by Nurse Hipp for neck and lower back pain which made his stomach hurt resulting in "blood in my waste." (Complaint).  Further, plaintiff alleges that "Nurse Brown willfully gave me some sinuses medication that makes my blood-pressure goes up, and I told her about it, she said she don't care." (Complaint).  Additionally, plaintiff contends that he was given a haircut from the barber at JRLDC and received a bad cut on the right side of his neck but Nurse Hipp did not do anything but look at the cut and sent him back to his cell.

Defendants assert that plaintiff has failed to establish a claim for inadequate medical treatment in violation of the Eighth Amendment to the United States Constitution. As to plaintiff's injury by the barber, defendants assert that the injuries were *de minimus* and it was a "mear mistake

which was insubstantial as a matter of law." (Memorandum p. 14). Defendants assert that plaintiff's

own allegations do not allege that the barber purposely or intentionally cut him and Nurse Hipp

states that she saw him in the emergency area of the prison and treated him by giving him a Tetnis

shot. (Hipp affidavit). However, plaintiff in his response asserts that Nurse Hipp did not give him

a Tetnis shot.

The undersigned finds that the plaintiff fails to show that defendants were deliberately

indifferent to his medical needs. In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme

Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary

and wanton infliction of pain," <u>Id</u>., quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976). The

court stated:

> An inmate must rely on prison authorities to treat his medical needs;
> if the authorities fail to do so, those needs will not be met. . . . We
> therefore conclude that deliberate indifference to serious medical
> needs of a prisoner constitutes the "unnecessary and wanton infliction
> of pain," <u>Gregg v. Georgia</u>, supra, at 173, (joint opinion), proscribed
> by the Eighth Amendment. This is true whether the indifference is
> manifested by prison doctors in their response to the prisoner's needs
> or by prison guards in intentionally denying or delaying access to
> medical care or intentionally interfering with the treatment once
> prescribed. Regardless of how evidenced, deliberate indifference to
> a prisoner's serious illness or injury states a cause of action under §
> 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the

court was careful to note, however, that "an inadvertent failure to provide adequate medical care"

does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not

> state a valid claim of medical mistreatment under the
> Eighth Amendment.  Medical malpractice does not
> become a constitutional violation merely because the
> victim is a prisoner.  In order to state a cognizable
> claim, a prisoner must allege acts or omissions
> sufficiently harmful to evidence deliberate
> indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of

Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  In that case, the court noted that treatment "must be

so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to

fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not

violate the Eighth Amendment." Id. at 851.  Unless medical needs were serious or life threatening,

and the defendant was deliberately and intentionally indifferent to those needs of which he was

aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825

(1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under

42 U.S.C. § 1983. Estelle v. Gamble, supra.  Negligence, in general, is not actionable under 42

U.S.C. § 1983.  See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon,

474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v.

Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The

district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under

state law.  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03

(1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble,

supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. In fact, plaintiff alleges in his complaint that he was seen by a nurse, as well as Nurse Practitioner Hipp. Plaintiff alleges that he was given medication for pain and for sinus problems. Nurse Practitioner Hipp stated in her affidavit, plaintiff was seen over 100 times in medical and treated over 50 times since entering JRLDC in September 2004. As to plaintiff's allegations that he saw blood in his "aste"in December

14

2004, after being given some pain medication for his neck and back which caused his stomach to hurt, Nurse Practitioner Hipp attests that plaintiff never complained of blood in his waste to medical and she discussed all of his treatment. However, plaintiff asserts that Nurse Hipp ignored his medical requests. Additionally, Nurse Hipp asserts that she administered a Tetnis shot to plaintiff after he received a cut on his neck but plaintiff asserts that she did not give him a shot or medical treatment for the cut. Defendants have not submitted the medical records of plaintiff so that an issue of fact exists as to this issue. However, even if an issue of fact does exist and plaintiff's allegations are true, he has failed to show any serious injury as a result of the cut or for not receiving a Tet nis shot. Thus, even assuming plaintiff's allegations are true as to the medication and treatment he received, plaintiff has shown nothing more than a disagreement with the medical treatment provided, not that he was denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that de minimis injury.

As well, there is nothing in the plaintiff's complaint that alleges his health conditions were/are life threatening conditions that warranted medical treatment. Unless medical needs are serious or life threatening, and the defendant was deliberately and irrationally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986). Estelle requires that a medical problem be "serious" before the Constitution is implicated. Additionally, the plaintiff has not shown that any conduct by the defendants "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as

15

medical care is provided. <u>Brown v. Thompson</u>, <u>supra</u>. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. <u>Russell v.Sheffer</u>, <u>supra</u>.

Clearly, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.

## E. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against them for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendant Sheriff Thompson argues that as the Sheriff, he is an arm of the State of South Carolina and is barred from any §1983 claims for damages in his official capacity by the Eleventh Amendment. Further, defendant Tom Fox asserts that as director of JRLDC, he is also an arm of the state by virtue of its being under the direct control of the Horry County Sheriff's Office and Sheriff Thompson.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and

16

stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that defendant Thompson was sued in his official capacity as the Sheriff of Horry County as the JRLDC is under the control of the Sheriff. A suit in federal court against the Sheriff in his official capacity is barred by the Eleventh Amendment. Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996). Therefore, as plaintiff has named defendant Sheriff Thompson in his official capacity, he is immune from suit. Therefore, as to defendant Sheriff Thompson, it is recommended that defendants' motion for summary judgment be granted.

As defendant Tom Fox is the director of the JRLC which is under the control of the Sheriff of Horry County, defendant Fox is also entitled to Eleventh Amendment Immunity in his official capacity as being an arm of the state. Therefore, these defendants are entitled to Eleventh Amendment immunity from monetary damages.

17

## F. INDIVIDUAL CAPACITY/RESPONDEAT SUPERIOR

Defendants assert that plaintiff's complaint states absolutely no factual allegations against Sheriff Thompson or Director Fox. Defendants argue that, even assuming plaintiff's allegations are true, plaintiff has not set forth any evidence that defendants were personally involved in any alleged violation of rights.  Defendants contend that plaintiff has not set forth any evidence that Defendant Director Fox was involved in the supervision of other employees of the JRLDC who allegedly violated plaintiff's rights. Defendants argue that they cannot be held liable via respondeat superior theory for the actions of any individuals employed at the JRLDC.

Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982).  The employer or supervisor may only be held liable if the plaintiff can show that they had actual knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984).

In a §1983 action, a supervisor is not liable for the acts of an employee, absent an official policy or custom which result in illegal action.  Monell, supra.  A medical treatment claim is not appropriate against a superintendent/supervisor absent an allegation that he was personally connected to the treatment received.  Vinnedge v. Gibbs, 550 F. 2d 926 (4th Cir. 1977).  Supervisory liability requires that supervisory officials failed promptly to provide an inmate with needed medical care, deliberately interfered with a prison doctor's performance, tacitly authorized or were indifferent to

18

prison physician's constitutional violation. <u>Milter v. Beon</u>, 896 F.2d 848 (4th Cir. 1990).

Defendants Thompson and Fox cannot be held liable under a <u>respondeat superior</u> theory under Title 42, U.S.C. § 1983 for the acts of a subordinate employee. <u>Monell</u>, <u>supra</u>.  Additionally, there is no evidence that these defendants were personally involved in the allegations as alleged. Thus, it is recommended that all allegations against defendants be dismissed on this theory.


## G. QUALIFIED IMMUNITY

The defendants argue that they are entitled to a grant of qualified immunity under the facts as presented in the plaintiff's complaint.

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established

19

statutory or constitutional rights of which a reasonable person would have known.  Harlow, 457 U.S.

at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit  stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent.  As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir. 1991), the Fourth Circuit Court of Appeals

explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits.  Without such immunity, the operations of government would be immobilized.  Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment."  The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988).  Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law.  Second, the manner in which this right applies to the actions of the official must also be apparent.  Officials are not liable for bad guesses in gray areas; they are liable for transgressing

21

bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra.  Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## H.  EMOTIONAL DISTRESS

Plaintiff alleges that he is entitled to receive damages for emotional stress due to the conditions alleged in his complaint.

Plaintiff cannot recover damages for emotional distress. Case law prior to the Prison Litigation Reform Act had held that there is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish in prison, and hence, there is no liability under § 1983 regarding such claims. See Grand Staff v. City of Borger, 767 F.2d 161 (5th Cir. 1989). The Prison Litigation Reform Act provides that physical injuries are a prerequisite for an award of damages for emotional distress under 42 U. S. C. § 1983. See new 42 U.S.C. § 1997e(e); Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997).  As the plaintiff has not provided evidence of any physical injury, he is not entitled to recover for mental anguish or emotional distress under 42 U. S. C. § 1983. Therefore, his claims for emotional distress should be dismissed.

## II.  CONCLUSION

The plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.

It is, therefore, RECOMMENDED that the motion for summary judgment filed by the defendants (document # 14) be **GRANTED** in its entirety.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 23, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.  *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).  Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).  *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * *  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * *  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").  This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections.  *See* Wright v. Collins, *supra*; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina  29503**
